UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

KEEFE, BRUYETTE & WOODS, INC.

      Plaintiff,

  -against-                                        Case No. 23-CV-6377

W.R. BERKLEY CORPORATION,

      Defendant.
-------------------------------------------------------X

## COMPLAINT

Plaintiff Keefe, Bruyette & Woods, Inc. ("KBW"), by its attorneys, Davis Wright Tremaine, LLP, as and for its Complaint against defendant W.R. Berkley Corporation ("Berkley"), alleges as follows:

## SUMMARY OF ACTION

1. This action arises out of Berkley's breach of its contractual obligation to pay a fee due and owing to KBW under the express terms of the parties' written agreement. The agreement sets forth the terms under which Berkley retained KBW to provide financial advisory and investment banking services in connection with the possible sale of Berkley's subsidiary, Breckenridge, IS, Inc. ("Breckenridge") or one or more of Breckenridge's subsidiaries. The agreement was entered into on October 30, 2018, and has been in effect since that date as it was never terminated by either party.

2. On June 1, 2023, Berkeley announced the completed sale of the property and casualty insurance division of Breckenridge, recognizing an estimated pre-tax net realized gain on investment of $86 million on the sale. Under the parties' written

agreement, the sale triggered Berkley's obligation to pay a fee to KBW of $1 million. Despite KBW's demands for payment of the fee, Berkley has refused to make payment.

3. KBW brings this action for breach of contract to recover the fee owed as expressly provided for in the parties' written agreement.

## PARTIES

4. KBW is a full-service investment banking firm and broker-dealer specializing in the financial services sector. KBW is incorporated under the laws of the State of New York, and maintains its principal place of business in the State of New York.

5. Berkley is an insurance holding company that is among the largest commercial lines writers in the United States and operates worldwide in two segments of the property casualty insurance business, (i) insurance and (ii) reinsurance and monoline excess. Berkley is incorporated in the State of Delaware and has its principal place of business in Greenwich, Connecticut.

## JURISDICTION

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. KBW is a citizen of the state New York. Berkley is a citizen of the states of Connecticut and Delaware. The amount in controversy exceeds $75,000.

## VENUE

7. Venue is proper in this District based on the provisions of 28 U.S.C. § 1391, and based on the forum selection in the parties' written agreement in which they agreed to submit to venue in this District.

**FACTUAL ALLEGATIONS**

**The Agreement At Issue**

8. On or about October 13, 2018, KBW and Berkley entered into a written agreement (the "Agreement") setting forth the terms and conditions on which Berkley engaged KBW to render financial advisory and investment banking services to Berkley in connection with the possible sale of Breckenridge, an indirect wholly owned subsidiary of Berkley, and/or one or more of Breckenridge's wholly owned subsidiaries listed on Schedule A to the Agreement (which, together with Breckenridge, are defined as the "Target Entities" in the Agreement). The sale of a Target Entity to another corporation or business entity constituted a "Transaction" under the Agreement that triggered Berkley's obligation to pay fees to KBW. A copy of the Agreement is annexed as Exhibit A and incorporated herein.

9. Berkley expressly promised in the Agreement to pay a Base Contingent Fee in the event of the closing of a Transaction. Specifically, the Agreement provides in relevant part:

> ***Base Contingent Fee.*** Parent [Berkley] will pay to KBW at the time of closing of the Transactions a non-refundable cash fee equal to $500,000, plus 4.0% of the Aggregate Consideration involved in all such Transactions in excess of $47,500,000 (the "Base Contingent Fee Threshold Amount") (the "Base Contingent Fee"), up to a maximum Base Contingent Fee of $1,000,000.

Ex. A, Agreement, p. 3 (emphasis in original)

10. The Agreement defined "Aggregate Consideration" as "the total amount of cash and the fair market value on such date or over such period as may be set forth herein (and otherwise on the date of closing), of all other property paid or payable by the Buyer directly or indirectly to Parent [Berkley], the Target Entities, and their

3

securityholders in connection with the Transactions plus the value of any debt or preferred stock obligations of the Target Entities assumed by the Buyer, or retired or defeased in connection with the Transactions." Ex. A, Agreement, p. 4.

11.	The Agreement contained a provision allowing for its termination by either party upon ten days' written notice to the other party.  The Agreement states in pertinent part:  "KBW's engagement hereunder may be terminated at any time with or without cause, upon 10 days' written notice to that effect to the other party . . . ." Ex. A, Agreement, p. 7.  Neither party ever provided written notice terminating the Agreement.

12.	As further confirmation that Berkley did not terminate the Agreement, Berkley did not pay KBW the fee that it would have become obligated to pay "promptly" in the event that Berkley terminated the Agreement for convenience.  The Agreement contained an unusual termination provision that protected KBW from Berkley's unilaterally terminating the Agreement after KBW had performed the work to prepare Transaction materials and distribute them to prospective buyers.  Berkley could do so only after paying KBW a fee.  Specifically, the Agreement required Berkley to pay KBW a $100,000 fee, entitled "Engagement Fee," in the event that Berkley terminated the Agreement for convenience after KBW furnished Transaction materials to prospective buyers and no Transaction was completed.  The Agreement provides as follows:

> **Engagement Fee.**  In the event this Agreement is terminated by Parent for convenience following KBW furnishing Transaction materials to prospective Buyers and without a Transaction being consummated, Parent agrees to pay KBW a non-refundable cash fee of $100,000 (the "Engagement Fee") promptly after such termination.

Ex. A, Agreement, pp. 3-4.  KBW furnished Transaction materials to prospective buyers in late 2018.  However, because Berkley did not terminate the Agreement for

4

convenience (or otherwise), it did not pay KBW the $100,000 Engagement Fee, which it was clearly required to pay promptly after such termination.  Berkley's failure to pay the Engagement Fee demonstrates that Berkley never terminated the Agreement.

### The June 2023 Transaction

13.  KBW duly performed all of its obligations under the Agreement.  The work that KBW performed included but was not limited to performing diligence on the Target Entities; researching and creating a list of potential strategic and financial buyers; preparing presentation materials and providing them to potential buyers that Berkley approved to be contacted; engaging with potential buyers to respond to questions about the Target Entities; soliciting indications of interest from potential buyers; evaluating the indications of interest received; communicating with Berkley on the status of the transaction and the feedback received from potential buyers; and reviewing with Berkley the proposals received, including two written indications of interest from qualified strategic buyers.

14.  The initial work that KBW performed did not immediately result in the completion of a Transaction.  In or around January 2019, Berkley decided to suspend active efforts to market and sell the Target Entities, but left in place its Agreement with KBW.  In the ensuing years, KBW periodically kept in contact with Berkley concerning the status of the Target Entities and to discuss potential buyers that had contacted KBW about those entities.  To KBW's understanding, this engagement was open; while Berkley had placed on hold its active efforts to sell the Target Entities, those active efforts could be restarted at any time and it was therefore wholly logical that the Agreement remained in place.  Thus, although either KBW or Berkley could have terminated the Agreement

without cause on ten days' written notice, neither party ever did so, Berkley never paid the Engagement Fee required to be paid upon termination, and the Agreement remained in effect.

.       15.     On June 1, 2023, Berkley issued a press release announcing the completed sale of the property and casualty insurance services division of Breckenridge, and that Berkley was recognizing an estimated pre-tax net realized gain on investment of $86 million on the sale in the second quarter of 2023 (the "June 2023 Transaction"). A copy of the press release is annexed as Exhibit B.

        16,     The June 2023 Transaction was a "Transaction" under the terms of the Agreement that triggered Berkley's obligation to pay to KBW the Base Contingent Fee. Based on the size of the transaction, Berkley became obligated to pay to KBW the maximum Base Contingent Fee under the Agreement of $1 million based on the disclosed estimated pre-tax gain from the transaction.

        17.     On June 5, 2023, KBW sent Berkley an invoice requesting payment of the Base Contingent Fee of $1 million due and owing under the terms of the Agreement. Berkley refused to make payment, asserting that KBW's engagement "concluded" in January 2019. Despite KBW's requests, however, Berkley did not provide evidence that it provided the written notice required for termination of the Agreement pursuant to its terms. Indeed, KBW never received written notice of termination of the Agreement, and never delivered written notice of termination to Berkley. The Agreement was thus never terminated and remained in effect through the date of the June 2023 Transaction.

        18.     Instead of paying the requested fee, on June 9, 2023, Berkley offered to pay to KBW the $100,000 Engagement Fee that it was required to pay "promptly" upon

termination of the Agreement.  Berkley's failure to pay that fee in 2019 or any other previous time is further confirmation that the Agreement and its obligations were not terminated and remained in effect through the date of the June 2023 Transaction.

19. Berkley has thus breached the Agreement by refusing and failing to pay to KBW the $1 million Base Contingency Fee, and owes compensatory damages to KBW in accordance with the terms of the Agreement.

## **CLAIM FOR RELIEF**

### **Count I**
**(Breach of Contract)**

20. The allegations of paragraphs 1 through 19 inclusive are realleged as though fully set forth herein.

21. By virtue of the foregoing, Berkley breached the Agreement because it failed to pay KBW the Base Contingency Fee due and owing with respect to the June 2023 Transaction.

22. KBW duly complied with the terms and conditions of the Agreement.

23. Berkley's breach of the Agreement has caused KBW to incur monetary damages in the amount of $1 million, the amount of the fee it is owed under the Agreement.

WHEREFORE, Plaintiff Keefe, Bruyette & Woods, Inc. respectfully seeks judgment:  (i) awarding monetary damages of $1 million, plus pre-and post-judgment interest; and (ii) such other and further relief as the Court deems appropriate.

Dated: New York, New York
July 24, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Theodore R. Snyder
Theodore R. Snyder (TRS-6376)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 880-3976

Attorneys for Plaintiff
Keefe, Bruyette & Woods, Inc.